1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7

8

9

10

11

12

DELIVERY EXPRESS, INC.,

                    Plaintiff,

    v.

JOEL SACKS, et al.,

                    Defendants.

CASE NO. C15-5842 BHS

ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

13

14

15

This matter comes before the Court on the parties' cross-motions for summary

judgment (Dkts. 19, 22).  The Court has considered the pleadings filed in support of and

in opposition to the motions and the remainder of the file and hereby rules as follows:

16

## I. PROCEDURAL AND FACTUAL BACKGROUND

17

18

19

20

Plaintiff Delivery Express, Inc. ("Delivery Express") provides freight brokerage

services throughout the Western Washington region.  Dkt. 23, Declaration of David

Hamilton ("Hamilton Dec.") ¶¶ 2, 6.  Delivery Express primarily arranges the delivery of

small packages to consumers.  Dkt. 1 ("Comp.") ¶ 1.1; Hamilton Dec. ¶ 2.

21

22

Between 2010 and 2012, the Washington Department of Labor and Industries

("Department") audited Delivery Express' operations from 2009 through 2011 to

1  determine whether Delivery Express was paying workers' compensation premiums for its

2  drivers.  Hamilton Dec. ¶ 5; Dkt. 20, Declaration of Eliezar Eidenbom ("Eidenbom

3  Dec.") ¶ 6.  Under Washington's Industrial Insurance Act ("IIA"), employers are required

4  "to report and pay workers' compensation premiums for all of their workers."  *Dep't of*

5  *Labor & Indus. v. Lyons Enters. Inc.*, 186 Wn. App. 518, 528 (2015).

6       Following the audits, the Department concluded that Delivery Express' drivers

7  were "workers" under the IIA and that Delivery Express had not paid the required

8  premiums for those workers.  Hamilton Dec. ¶¶ 5, 22; Eidenbom Dec. ¶ 16.  In

9  September 2012, the Department fined Delivery Express for the unpaid premiums

10  between 2010 and 2011.  Hamilton Dec. ¶ 22.

11       Delivery Express appealed the fine to the Washington Board of Industrial

12  Insurance Appeals.  *Id.*  Between November 2014 and August 2015, an industrial appeals

13  judge heard over 30 days of testimony and received over 500 exhibits.  *Id.*; Eidenbom

14  Dec. ¶ 10.  The parties are currently awaiting a decision from the industrial appeals judge.

15  Hamilton Dec. ¶ 6.

16       In January 2015, the Department notified Delivery Express that it intended to audit

17  Delivery Express' operations from 2012 through 2014.  *Id.* ¶ 23.  Delivery Express

18  changed its business model in 2011.  *Id.* ¶ 7.  In November 2015, the Department sent

19  questionnaires to individuals with whom Delivery Express does business.  *Id.* ¶ 24.

20       On November 20, 2015, Delivery Express filed a declaratory judgment action

21  under 28 U.S.C. §§ 2201 and 2202 against Defendants Joel Sacks, Gina Bautista, and

22  John and Jane Does 1–10 (collectively "Defendants").  Comp.  Delivery Express seeks to

stop the Department's audit of Delivery Express' operations after 2011.  *Id.* ¶ 4.4.
Delivery Express claims that the Federal Aviation Administration Authorization Act
("FAAAA"), 49 U.S.C § 14501(b)(1), preempts the IIA's requirement that employers pay
workers' compensation premiums for covered workers.  Comp. ¶ 1.6.

On March 24, 2016, Defendants moved for summary judgment.  Dkt. 19.  On
March 31, 2016, Delivery Express cross-moved for summary judgment.  Dkt. 22.  The
parties filed their respective responses,[1] Dkts. 27 & 29, and replies, Dkts. 33 & 35.

## II. DISCUSSION

Defendants move for summary judgment on two alternate grounds: (1) Delivery
Express has not exhausted its state administrative remedies; and (2) the FAAAA does not
preempt the IIA.  Dkt. 19 at 1.  Delivery Express disagrees and cross-moves for summary
judgment.  Dkt. 22 at 3.  The Court concludes that it need not address the exhaustion
issue because the FAAAA ultimately does not preempt the IIA's requirement that
employers pay workers' compensation premiums for covered workers.

## A.   Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).
The moving party is entitled to judgment as a matter of law when the nonmoving party

---

[1] Both parties seek to strike evidence submitted by the other party.  Dkt. 27 at 2–4; Dkt.
29 at 4–5.  The Court will identify the relevant and admissible evidence it relies upon in reaching
its decision.

1    fails to make a sufficient showing on an essential element of a claim in the case on which

2    the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

3    323 (1986).  There is no genuine issue of fact for trial where the record, taken as a whole,

4    could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec.*

5    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

6    present specific, significant probative evidence, not simply "some metaphysical doubt").

7    *See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists

8    if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or

9    jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477

10   U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

11   626, 630 (9th Cir. 1987).

12          The determination of the existence of a material fact is often a close question.  The

13   Court must consider the substantive evidentiary burden that the nonmoving party must

14   meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477

15   U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual

16   issues of controversy in favor of the nonmoving party only when the facts specifically

17   attested by that party contradict facts specifically attested by the moving party.  The

18   nonmoving party may not merely state that it will discredit the moving party's evidence

19   at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W.*

20   *Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory,

21   nonspecific statements in affidavits are not sufficient, and missing facts will not be

22   presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

1  **B.    FAAAA Preemption**

2  "Preemption analysis begins with the 'presumption that Congress does not intend

3  to supplant state law.'" *Tillison v. Gregoire*, 424 F.3d 1093, 1098 (9th Cir. 2005)

4  (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514

5  U.S. 645, 654 (1995)).  "Congressional intent, therefore, is the ultimate touchstone of

6  preemption analysis." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d

7  1031, 1040 (9th Cir. 2007).  As the party claiming preemption, Delivery Express bears

8  the burden of establishing that preemption applies.  *Dilts v. Penske Logistics, LLC*, 769

9  F.3d 637, 649 (9th Cir. 2014).

10  "Where, as in this case, Congress has superseded state legislation by statute, [the

11  Court's] task is to identify the domain expressly pre-empted." *Dan's City Used Cars,*

12  *Inc. v. Pelkey*, 133 S. Ct. 1769, 1778 (2013) (internal quotation marks omitted).  In doing

13  so, the Court first looks to the statutory language of the FAAAA, "which necessarily

14  contains the best evidence of Congress' pre-emptive intent."  *Id.*

15  The FAAAA preempts state laws that relate to intrastate rates, routes, or services

16  of freight brokers:

17  [N]o State or political subdivision thereof and no intrastate agency . . . shall
enact or enforce any law, rule, regulation, standard or other provision
18  having the force and effect of law relating to intrastate rates, intrastate
routes, or intrastate services of any freight forwarder or broker.
19  49 U.S.C. § 14501(b)(1).

20  As Defendants point out in their summary judgment motion, there appears to be a

21  dearth of case law analyzing § 14501(b)(1).  Dkt. 19 at 7.  As a result, both parties rely on

22

1   cases analyzing the next subsection, § 14501(c)(1), which "prohibits enforcement of state

2   laws 'related to a price, route, or service of any motor carrier . . . with respect to the

3   transportation of property.'" *Dan's City Used Cars*, 133 S. Ct. at 1778 (quoting 49

4   U.S.C. § 14501(c)(1)).

5          Although § 14501(c)(1) pertains to interstate motor carriers and § 14501(b)(1)

6   pertains to intrastate freight brokers, both subsections provide that the state law must

7   "relate to" rates, routes, and services in order to be preempted by the FAAAA.[2]  Given

8   the similar language between the two subsections, the Court likewise finds cases

9   analyzing § 14501(c)(1) to be instructive.[3]  *See Gustafson v. Alloyd Co., Inc.*, 513 U.S.

10  561, 570 (1995) ("[It is a] normal rule of statutory construction that identical words used

11  in different parts of the same act are intended to have the same meaning." (internal

12  quotation marks omitted)).

13         Although the phrase "related to" is broad, *Morales v. Trans World Airlines, Inc.*,

14  504 U.S. 374, 383 (1992), the Supreme Court has cautioned that the FAAAA "does not

15  preempt state laws affecting carrier prices, routes, and services, 'in only a tenuous,

16  remote, or peripheral manner.'" *Dan's City Used Cars*, 133 S. Ct. at 1778 (quoting

17

18

19         [2] Delivery Express argues that the scope of § 14501(b)(1) is broader than § 14501(c)(1)

20  because the state law need not address the transportation of property to be preempted by
    § 14501(b)(1).  Dkt. 22 at 10, 15.  Both subsections, however, provide that the state law must

21  first relate to rates, routes, or services, which is the dispositive issue in this case.
           [3] In analyzing § 14501(c)(1), courts have relied on cases interpreting the preemption

22  provision in the Airline Deregulation Act due to the similar statutory language.  *See Rowe v. New
    Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008).

1    *Rowe*, 552 U.S. at 371).  As the Supreme Court explained, "the breadth of the words

2    'related to' does not mean the sky is the limit."  *Id.*

3           This Court must therefore "draw a line between laws that are significantly 'related

4    to' rates, routes, or services, even indirectly, and thus are preempted, and those that have

5    'only a tenuous, remote, or peripheral' connection to rates, routes, or services, and thus

6    are not preempted."  *Dilts*, 769 F.3d at 643 (citing *Rowe*, 552 U.S. at 371).  "In

7    'borderline cases' in which a law does not refer directly to rates, routes, or services, 'the

8    proper inquiry is whether the provision, directly or indirectly, *binds* the carrier to a

9    particular price, route or service and thereby interferes with the competitive market forces

10   within the industry.'"  *Id.* at 646 (quoting *Am. Trucking Ass'ns v. City of Los Angeles*,

11   660 F.3d 384, 397 (9th Cir. 2011)).

12          To help make this distinction, the Court also considers the FAAAA's purpose.

13   *See id.* at 644.  "The principal purpose of the FAAAA was 'to prevent States from

14   undermining federal deregulation of interstate trucking' through a 'patchwork' of state

15   regulations."  *Id.* (quoting *Am. Trucking Ass'ns*, 660 F.3d at 395–96).  "The sorts of laws

16   that Congress considered when enacting the FAAAA included barriers to entry, tariffs,

17   price regulations, and laws governing the types of commodities that a carrier could

18   transport."  *Id.*  "Congress did not intend to preempt generally applicable state

19   transportation, safety, welfare, or business rules that do not otherwise regulate prices,

20   routes, or services."  *Id.*

21

22

1    With this background in mind, the Court turns to the IIA.  Under the IIA,

2  employers are required to report and pay workers' compensation premiums for all

3  covered workers.  *Lyons*, 186 Wn. App. at 528.  An employer is defined as

4        any person, body of persons, corporate or otherwise, and the legal
         representatives of a deceased employer, all while engaged in this state in
5        any work covered by the provisions of this title, by way of trade or
         business, or who contracts with one or more workers, the essence of which
6        is the personal labor of such worker or workers. . . .

7  RCW 51.08.070.  A worker, in turn, is defined as

8        every person in this state who is engaged in the employment of an
         employer . . . [and] also every person in this state who is engaged in the
9        employment of or who is working under an independent contract, the
         essence of which is his or her personal labor for an employer under this
10       title . . . .

11  RCW 51.08.180.  The purpose of the IIA was to "provid[e] compensation to all covered

12  employees injured in their employment, with doubts resolved in favor of the worker."

13  *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470 (1987).

14    As the statutory language makes plain, the IIA applies to all employment in

15  Washington State.  *See* RCW 51.08.070; RCW 51.08.180; *see also Doty v. Town of S.*

16  *Prairie*, 155 Wn.2d 527, 531 (2005).  The IIA also pertains to workers' compensation; it

17  does not refer to or mandate that freight brokers use a particular rate, route, or service to

18  comply with the law.  The IIA is therefore a generally applicable state workers'

19  compensation law that does not otherwise regulate intrastate rates, routes, or services of

20  freight brokers.  *See Dilts*, 769 F.3d at 644.

21    Delivery Express nevertheless argues that enforcement of the IIA will have a

22  "direct, and substantial, impact on routes and services."  Dkt. 22 at 6.  To support this

1    argument, Delivery Express presents evidence that the Department's assessment of

2    workers' compensation premiums will increase Delivery Express' cost of doing business.

3    Hamilton Dec. ¶¶ 30–31; Dkt. 26, Declaration of Ken Johnson ("Johnson Dec.") ¶¶ 16,

4    18–20.  According to Delivery Express' president, David Hamilton ("Hamilton"),

5    Delivery Express will need to "redesign its operations" if it is required to pay such

6    premiums.  Hamilton Dec. ¶ 29.  Delivery Express has determined that it would most

7    likely reduce the number of carriers it contracts with to account for the increased cost of

8    doing business.  Johnson Dec. ¶ 21; *see also* Hamilton Dec. ¶¶ 30–31, 38, 43.

9         However, a state law that simply increases the overall cost of doing business or

10   makes it more costly for freight brokers to choose some routes or services relative to

11   others does not meet the "related to" test for FAAAA preemption.  *Dilts*, 769 F.3d at 647.

12   As the Ninth Circuit has explained, "even if state laws increase or change a motor

13   carrier's operating costs, broad laws applying to hundreds of different industries with no

14   other forbidden connection with prices, routes, and services—that is, those that do not

15   directly or indirectly mandate, prohibit, or otherwise regulate certain prices, routes, or

16   services—are not preempted by the FAAAA."  *Id.* (internal quotation marks omitted).

17   Put another way, "the mere fact that a motor carrier must take into account a state

18   regulation when planning services is not sufficient to require FAAAA preemption, so

19   long as the law does not have an impermissible effect," such as binding freight brokers to

20   specific rates, routes, or services.  *Id.* at 649.

21        Although Delivery Express has presented evidence that it will likely change its

22   business practices to account for workers' compensation premiums, Delivery Express has

1  not presented evidence showing that the assessment of such premiums will *bind* it to

2  specific rates, routes, or services.  Indeed, the evidence submitted by Delivery Express

3  indicates that it retains the ability to make decisions about its rates, routes, and services.

4  *See, e.g.*, Hamilton Dec. ¶ 35; Johnson Dec. ¶ 5; *see also Dilts*, 769 F.3d at 647.

5        In sum, Delivery Express has failed to show § 14501(b)(1) of the FAAAA

6  preempts the IIA's requirement that employers pay workers' compensation premiums for

7  covered workers.  The Court therefore grants Defendants' summary motion and denies

8  Delivery Express' cross-motion.

9                              **III. ORDER**

10       Therefore, it is hereby **ORDERED** that Defendants' motion for summary

11 judgment (Dkt. 19 ) is **GRANTED** and Delivery Express' motion for summary judgment

12 (Dkt. 22) is **DENIED**.  The Clerk shall close this case.

13       Dated this  9ᵗʰ day of June, 2016.

14

15

16                    BENJAMIN H. SETTLE
                     United States District Judge

17

18

19

20

21

22